UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| JAMES V. CRITES<br>CAROLYN S. CRITES<br>4055 SR 729 N<br>Sabina, OH 45169<br><br>Plaintiffs,<br><br>-vs-<br><br>BANK OF AMERICA, N.A.,<br>c/o CT Corporation System<br>1300 East 9th St.<br>Cleveland, OH 44114<br><br>J.M. ADJUSTMENT SERVICES, LLC<br>c/o CSC-Lawyers Incorporating Service<br>50 West Broad Street<br>Columbus, OH 43215<br><br>Defendants. | Case No. 1:13-cv-320<br><br>Judge Herman J. Weber<br><br><u>FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, DEFAMATION & LIBEL, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u><br><br><u>JURY DEMAND ENDORSED HEREON</u> |

Plaintiffs James and Carolyn Crites [collectively, "the Crites"] state the following for their Complaint against Bank of America, N.A. ["Bank of America"] and J.M. Adjustment Services, L.L.C. ["JMA Services"]:

## INTRODUCTION

1. Mr. and Mrs. Crites are retired Sabina, Ohio homeowners whose mortgage is serviced by Bank of America.

2. Mr. Crites was laid off from his job when DHL shut down its Wilmington, OH operations in 2009. For over two years, the Crites continued to make payments on their mortgage loan with Bank of America. When they realized they were going to have trouble making payments, in late 2011, the Crites requested assistance from Bank of America and received a permanent loan modification ("Loan Modification," attached as Exhibit A). The Crites signed and notarized the contract modifying their loan, and Bank of America counter-signed.

3. At first, the Crites were relieved and confident that they would no longer have to worry about how they would keep up their payments.

4. Although Mr. and Mrs. Crites haven't missed a payment since the loan was modified, Bank of America has refused to honor their contract. In April 2013, despite the signed loan modification and the Crites' regular payments, Bank of America sent the Crites a letter falsely claiming the Crites were delinquent and threatening to accelerate the loan and foreclose on their home.

5. As a result, the Crites are living with the daily trauma of imminent foreclosure and loss of their home, significantly damaged credit, and other serious and negative financial, physical, and mental consequences.

6. Bank of America has a duty to take steps that would have resolved the situation. Under the Crites' Note and Mortgage contracts, Bank of America is required to conduct a face-to-face interview with the Crites before accelerating their loan. This meeting is designed as an opportunity for borrowers to discuss workout options with their mortgage company.

7. Bank of America ignored these requirements and hired JMA Services as its debt collection agent. JMA's representative met with the Crites and explained she was unable to help implement the loan modification or discuss the loan at all. Instead, the JMA Services representative presented the Crites with pre-printed letters, which falsely claimed that the Crites told JMA Services that they were not interested in any future meetings or in exercising any of their options under the loan.

8. Mr. and Mrs. Crites bring this action for actual, statutory and punitive damages, costs and attorneys' fees for breach of contract, defamation, infliction of emotional distress, and violations of the Fair Debt Collection Practices Act.

## VENUE AND JURISDICTION

9. Under 12 U.S.C. §1331, the Court has subject matter jurisdiction over Plaintiffs' claims against JMA Services that arise under the Fair Debt Collection Practices Act ["FDCPA"].

10. The Court has supplemental subject matter jurisdiction under 12 U.S.C. §1367 over the Crites' claims against Bank of America. The factual allegations with respect to the Crites' claim against JMA

Services are part of the same case or controversy as the claims against Bank of America, including Defendants' deceptive practices and improper servicing of the Crites' loan. There are no novel or complex issues of state law, and the Crites' state law claims do not substantially predominate over their FDCPA claim.

11. The Court also has subject matter jurisdiction to hear the claims against Bank of America because the Crites, Bank of America, and JMA Services are citizens of different states, and the matter in controversy, without interest or costs, exceeds $75,000. Upon information and belief, both the mortgage loan debt and the value of the Crites' home exceed $75,000.

12. The Court also has subject matter jurisdiction to hear the claims against JMA Services because the Crites, Bank of America, and JMA Services are citizens of different states, and the matter in controversy, without or costs, exceeds $75,000.

13. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Ohio, and the mortgaged property that is the subject of this action is located in the Southern District of Ohio.

## PARTIES

14. James V. Crites and Carolyn S. Crites ("the Crites") are retired homeowners currently living at 4405 State Route 729 North, Sabina, OH 45169. The Crites are Ohio citizens and Plaintiffs in this action.

15. Mr. Crites is 64 years old. He worked at Airborne Express and DHL for over 17 years, until DHL shut down its Wilmington, Ohio operations in 2009. He now receives social security and retirement benefits.

16. Mrs. Crites is 62 years old, and has lived in southwest Ohio all her life. She worked at Airborne Express in Wilmington for almost ten years. She now receives disability benefits because of her osteoporosis.

17. Defendant Bank of America, N.A ["Bank of America"] is a national bank chartered under federal law with its headquarters in Charlotte, North Carolina. Bank of America or one of its affiliates began servicing the Crites' loan around 2009. Bank of America is the current servicer of the Crites' loan.

18. Defendant J.M. Adjustment Services, LLC, a.k.a. JMA Services, ["JMA Services"] is a Michigan limited liability corporation, with its headquarters, upon information and belief, at 16600 18 Mile Rd., Clinton Township, MI 48038. JMA Services uses the mails and interstate commerce in its business, the principal purpose of which is the collection of debts. In addition, JMA Services uses the mails and interstate commerce to regularly collect or attempt to collect, indirectly, consumer debts owed or asserted to be owed by others, including in the state of Ohio. Specifically, JMA Services regularly meets with homeowners on behalf of mortgage lenders and servicers to deliver and conduct communications in furtherance of their efforts to foreclose and collect on FHA loans.

19. According to its website, JMA Services provides collection-related communication services to creditors in all 50 states. Its clients include "major automotive finance companies," "major credit card companies," "major mortgage servicers," "credit unions," "student loan program lenders," "unsecured and secured lenders," "sub-prime mortgage and automotive lenders," and "other consumer lenders." JMA Servicers bills itself on its website as "an industry-leading provider of face-to-face borrower communications with the scale, experience and performance to deliver impressive and demonstrable results."

20. A mainstay of JMA Services' is conducting personal, face-to-face, visits with allegedly delinquent borrowers on behalf of JMA Services' creditor clients. The purpose of these visits is to obtain information to be used in collection efforts and to communicate with borrowers on behalf of creditors in furtherance of such collection efforts.

21. Bank of America and JMA Services recognize that JMA Services is a debt collector as defined in 15 U.S.C. §1692a(6) and specifically indicate as much in their written communications with borrowers (See "JMA Debt Letter," attached as Exhibit B).

## LOAN MODIFICATION

22. Mr. Crites had worked at Airborne & DHL for over 17 years when DHL closed its Wilmington operations in 2009. Mr. Crites received a severance package and unemployment benefits. He took

social security retirement benefits early, and all together the Crites were able to continue making their monthly mortgage payments for over two years, despite their hardship.

23. In 2011, Mr. Crites' unemployment benefits ran out, and the Crites realized they were going to have trouble making their mortgage payments in the future. The Crites submitted financial information to Bank of America for review in late 2011 or early 2012.

24. At the time the Crites submitted their financial information to Bank of America, they were current on the loan. As the Crites waited for a response, they continued to make their regular payments of approximately $782, pursuant to their original mortgage contract. They missed their March payment, but made full mortgage payments in January, February and April 2012.

25. In May 2012, the Crites were offered a "Trial Modification," which reduced their monthly payments to $677.82 for three consecutive months beginning June 1, 2012. According to the trial modification agreement ("Trial Modification"), attached as Exhibit C, if the Crites complied with the trial payment plan, Bank of America "would provide [the Crites] with a Partial Claim and [Modification Agreement] that would bring [the] loan current..."

26. The Crites made all three payments for the Trial Modification on time. After making their last trial payment, the Crites waited for a response from Bank of America.

27. In October 2012, Bank of America sent the Crites a permanent modification offer which the Crites accepted. The modification and partial claim ("Loan Modification," attached as Exhibit A) purported to be effective as of September 1, 2012, with the first modified payment due in January 2013.

28. The Crites signed, notarized and returned the necessary documents within about a week. One or more Bank of America employees specifically guided the Crites as to where they should sign on the documents.

29. Bank of America sent the Crites the same documents to re-sign in November 2012 and then sent someone to personally notarize one of the documents in January 2013.

30. The Crites properly signed, notarized, and returned all necessary documents to complete the loan modification. Copies of these documents, including the Loan Modification as signed on behalf of Bank of America, are attached as Exhibit A.

## WRONGFUL COLLECTION BY BANK OF AMERICA

31. Throughout 2012 and 2013, Bank of America has continued to send the Crites monthly bills for approximately $782.

32. Bank of America continued to send these statements even after the Loan Modification took effect, and even though no payments were due under the modification until January 2013. The Crites were afraid of losing their home, and so they continued to make these payments between September and December 2012.

33. Around January 2013, a Bank of America employee instructed the Crites by phone to ignore the mortgage bills and begin making modified payments. Beginning in January 2013, the Crites began making payments of $675.88, in accordance with Bank of America's instructions and the Loan Modification.

34. Although it continues to accept their payments, Bank of America has not honored the Loan Modification. It has misapplied their payments, sent them bills demanding improper payments, wrongfully accelerated the loan, and is now threatening to take their home through foreclosure.

35. In April 2013, despite the Crites' continuing payments, Bank of America sent them a letter claiming they were in default on their mortgage. The letter threatened that, unless the Crites paid $3,439.66 by May 11, 2013, Bank of America would immediately accelerate the loan and foreclose on their home. See Notice of Intent to Accelerate, attached as Exhibit D.

36. JMA Services also sent the Crites a letter in April 2013, alleging that the Crites were behind on their loan and that they owed $2663.70 to Bank of America. See JMA Debt Letter, attached as Exhibit B.

37. The Crites did not pay the amount wrongfully demanded by Bank of America and JMA Services, and, upon information and belief, Bank of America has now accelerated the Crites' loan in preparation to foreclose.

38. Although the Crites have tried to do the right thing to save their home, they have been forced to live with daily stress and trauma related to Bank of America's continuing wrongful threats.

## MEETING WITH JMA SERVICES

39. Under the Crites' Note and Mortgage, Bank of America had a duty to take steps that should have resolved this situation by April 2013.

40. The Crites loan is insured by the Federal Housing Administration ("FHA"). Their Note and Mortgage contracts prohibit acceleration and foreclosure unless the mortgagee follows certain federal regulations. (See, e.g., "Mortgage," attached as Exhibit E, at ¶9(d), 24 C.F.R. §203.500). Specifically, a mortgagee must take specific steps to avoid unnecessary foreclosures, including conducting a mandatory face-to-face interview with the homeowners prior to acceleration. 24 C.F.R. §§203.500 et. seq. The purpose of the face-to-face interview is to allow the homeowners and mortgage servicer to discuss possible "loss mitigation" options and avoid a potentially unnecessary foreclosure.

41. Bank of America did not take measures required by the FHA before accelerating the Crites' loan.

42. Instead, in April 2013, as part of its wrongful debt collection efforts, Bank of America sent a letter informing the Crites that "JMA Services" would be coming to their home to meet with them about the loan. The Crites called JMA Services on or about April 15, 2013 to arrange a meeting.

43. A representative from JMA Services met with the Crites on April 17, 2013 at their attorney's office in Wilmington, OH. The Crites explained that they were trying to find out why Bank of America wouldn't recognize their loan modification.

44. The JMA representative informed the Crites she had no knowledge about their loan and that she could not discuss possible options with them or implement their loan modification. Instead, the JMA representative claimed she was only there to collect whatever paperwork the Crites might have prepared to apply for a modification.

45. The Crites explained they already had a loan modification, and they did not provide JMA Services with another loan modification application.

46. Before leaving, the JMA representative provided the Crites with a sealed envelope. Inside was a pre-printed letter on Bank of America letterhead. "JMA Meeting Letter #1," attached as Exhibit F.

47. This pre-printed letter falsely claimed that the Crites had "informed our [JMA Services] representative that you [the Crites] did not want to set up a future appointment to collect documentation and you are not interested in pursuing any of the options that are available to you."

48. In fact, the Crites had not informed JMA Services or Bank of America that they did not want to set up a future appointment, nor did the Crites inform JMA Services or Bank of America that they were not interested in pursuing any of the options available to them.

49. After acknowledging this letter was not true, the JMA representative provided the Crites with a second letter, which claimed that "you [the Crites] were not home during the [JMA Services] representative's visit or the representative was unable to secure your privacy by verifying your identity[.]" "JMA Meeting Letter #2," attached as Exhibit G.

50. The JMA representative acknowledged that JMA Meeting Letter #2 was also false but claimed that she was required to give one of these two letters to the Crites.

51. JMA Services conducted the meeting with the Crites on behalf of Bank of America in order to facilitate and in furtherance of its collection of a consumer debt from the Crites. Specifically, the pre-prepared letters that JMA Services delivered to the Crites were purposefully designed to create a false paper record to create the impression that a prerequisite to foreclosure had been fulfilled when, in fact, it had not.

52. Instead of conducting a face-to-face interview that should have resolved this matter, Bank of America and JMA Services subjected the Crites to false and misleading communications in furtherance of their wrongful attempts to collect a debt.

## FIRST CAUSE OF ACTION—
## BREACH OF CONTRACT
## [Against Bank of America]

53. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully pleaded herein.

54. As described above, Bank of America offered to modify the Crites' loan, effective with the payment due September 2012. The Crites accepted this offer by signing, notarizing and returning the modification offer to Bank of America.

55. The Crites have been in material compliance with the Loan Modification at all relevant times.

56. Bank of America materially breached the Loan Modification contract, as described above, including but not limited to:

    a. Misapplying the Crites' monthly payments;

    b. Adding improper fees and charges to the loan;

    c. Wrongfully accelerating the loan; and

    d. Wrongfully threatening to take the Crites' home.

57. Bank of America has also breached the Note and Mortgage by accelerating the Crites' loan and attempting to foreclose on their home without having complied with necessary conditions precedent to foreclosure. Specifically:

    a. The Crites loan is insured by the Federal Housing Administration. Under the Crites' Note & Mortgage, Bank of America must follow HUD "loss mitigation" regulations as a precondition to accelerating the loan and/or filing foreclosure.

    b. These loss mitigation regulations require, *inter alia*, that Bank of America must engage in a face-to-face interview with the Crites before the loan is 3 months delinquent, 24 C.F.R. §203.604, and that Bank of America must evaluate the Crites for alternatives to foreclosure on a monthly basis. 24 C.F.R. §203.605.

    c. Bank of America accelerated the Crites' loan, but did not engage in an actual face-to-face interview with the Crites or conduct any actual evaluation of the loan during the time it claimed the loan was delinquent, post August 2012.

    d. If Bank of America had followed the FHA regulations as incorporated into the contract, it would have necessarily determined that the Crites were actually current on the Loan Modification.

58. Bank of America's breaches, as described above, have caused the Crites to suffer damages, including, upon information and belief, overpayments, improper fees and charges added to the loan, harm to the Crites' credit, severe emotional distress, and humiliation.

59. Bank of America knew or should have known that its breaches of contract, including wrongfully threatening to take the Crites' home and refusing to honor the Loan Modification, would be the type of breaches that would cause the Crites severe emotional distress.

60. The Crites are entitled to a proper accounting of their payments, compensatory and special damages, and Bank of America's specific performance of the modification contract.

## SECOND CAUSE OF ACTION—
## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT
### [Against JMA Services]

61. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully pleaded herein.

62. The Crites' mortgage loan, as described above, is a consumer debt as defined by 15 U.S.C. §1692a, and it was obtained for personal, family or household purposes, namely the purchase of the Crites' own personal residence.

63. JMA Services is a "debt collector" as defined by 15 U.S.C. §1692a(6), because it uses the mails and interstate commerce in furtherance of its principal purpose of collecting debt. In addition, as alleged above, JMA Services uses the mails and interstate commerce to regularly collect, attempt to collect, and facilitate the collection of consumer debts owed or asserted to be owed by others by making contact and conducting communications with borrowers.

64. JMA Services knowingly provided false and/or misleading communications to the Crites in order to facilitate the collection of the consumer debt allegedly owed to Bank of America. Specifically, the pre-prepared letters that JMA Services delivered to the Crites were purposefully designed to create a false paper record to create the impression that a prerequisite to foreclosure had been fulfilled when, in fact, it had not.

65. Upon information and belief, the routine to which the Crites were subjected by JMA Services is a standard practice of JMA Services when it is performing collection services for clients that are FHA lenders. JMA Services has established this procedure with the knowledge that the communications it provides to borrowers are false, misleading and that they are being used to facilitate and justify collection efforts premised on the false factual record they purport to create.

66. Upon information and belief, the purpose of the false and misleading communications that JMA Services provided to the Crites and which, upon information and belief, it routinely provides to FHA borrowers across the country, is to provide written documentation to support foreclosure filings that are made without first actually conducting the face-to-face mitigation meeting mandated by HUD regulations. As such, JMA Services' communications with borrowers are communications in connection with a consumer debt which are intended to facilitate and obtain payment for the creditor.

67. JMA Services made false, deceptive or misleading representations to the Crites in connection with the collection of a debt, in violation of 15 U.S.C. §1692e, as described above, including but not limited to:

    a. A letter that falsely stated the Crites had informed JMA Services that they did not want to set up a future appointment that they were not interested in pursuing any of the options that are available to them (JMA Meeting Letter #1, attached as Exhibit F);

    b. A letter that falsely stated the Crites were not home or could not provide identification during a scheduled meeting (JMA Meeting Letter #2, attached as Exhibit G); and

    c. A letter stating that the Crites owed amounts that were not due (JMA Debt Letter, attached as Exhibit B).

68. JMA Services' used unfair and unconscionable means to collect or attempt to collect a consumer debt in violation of 15 U.S.C. § 1692f, as alleged above, including but not limited to:

    a. A letter that falsely stated the Crites had informed JMA Services that they did not want to set up a future appointment that they were not interested in pursuing any of the options that are available to them;

    b. A letter that falsely stated the Crites were not home or could not provide identification during a scheduled meeting; and

    c. A letter stating that the Crites owed amounts that were not due.

69. The Crites suffered damages as a direct and proximate result of JMA Services' violations, as described above.

70. The Crites are entitled to actual and statutory damages, along with costs and reasonable attorney fees as determined by the Court, pursuant to 15 U.S.C. 1692k.

### THIRD CAUSE OF ACTION— DEFAMATION & LIBEL
### [Against Bank of America & JMA Services]

71. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully pleaded herein.

72. Upon information and belief, Bank of America and JMA Services have made and continue to make false and defamatory statements about the Crites concerning their home loan. These false statements include, but are not limited to:

    a. Claims that the Crites owe amounts on their mortgage loan account that they do not owe under the Loan Modification;

    b. Claims that the Crites failed to make payments on their mortgage loan;

    c. Claims that their account was delinquent when it was not;

    d. Claims that the Crites disclaimed any interest in future meetings or other "options" on their loan.

73. Upon information and belief, JMA Services and Bank of America have published and continue to publish these false statements to each other and various other third parties, including debt collectors, government agencies, and/or Credit Reporting Agencies.

74. The Crites have been injured and suffer ongoing injury as a direct and proximate result of these false statements. This injury to the Crites was foreseeable.

75. Upon information and belief, Bank of America and JMA Services acted with actual malice in their continued attempts to collect amounts that are not due and owing by the Crites; and by reporting their account in default and/or serious delinquency to the Credit Reporting Agencies.

76. Bank of America's and JMA Services' actions were in reckless disregard for the truth or falsity of the publication.

77. Bank of America and JMA Services acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons.

78. As a result, Defendants are liable to the Crites for actual and punitive damages, attorneys' fees, and/or all other relief the Court may award.

## FOURTH CAUSE OF ACTION—
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### [Against Bank of America]

79. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully pleaded herein.

80. As described above, Bank of America intentionally or recklessly overbilled the Crites, ignored the valid Loan Modification between the parties, ignored its obligations under the Note and Mortgage, and solicited or attempted to create a false record in order to foreclose on a loan that was not in default.

81. Bank of America's actions are extreme and outrageous.

82. As a direct and proximate result of Bank of America's intentional, reckless, and/or negligent infliction of emotional distress, the Crites have suffered severe humiliation, distress, depression, and anxiety. The loss of their financial well-being, further harm to their credit, and the threatened loss of their home are the sources of serious emotional distress.

83. Bank of America knew or should have known its actions would cause the Crites severe emotional distress.

84. Bank of America acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons.

85. As a result, Bank of America is liable to the Crites for actual and punitive damages, attorneys' fees, and/or all other relief the Court may award.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs James Crites and Carolyn Crites hereby request this Court enter judgment on behalf of Plaintiffs as follows:

A. Order Defendant Bank of America to comply with the terms of the Loan Modification contract and to take steps to correct harm caused by its breach.

B. Award Plaintiffs actual, statutory, and punitive damages in excess of $75,000, and to be determined at trial on Plaintiffs' claims for breach of contract, FDCPA violations, defamation, and intentional infliction of emotional distress claims.

C. Direct Defendants JMA Services and Bank of America to pay the cost of this proceeding, including Plaintiffs' attorneys' fees as appropriate.

D. Award Plaintiffs such other relief as the court deems just and equitable.

Respectfully Submitted,

/s/ Mark B. Lawson
Mark B. Lawson (0069689)
Brian Howe (0086517)
Steven Sharpe (0083408)
Attorneys for Plaintiffs
Legal Aid Society of Southwest Ohio, LLC
215 E. Ninth Street, Suite 500
Cincinnati, Ohio 45202
(513) 241-9400
Fax: (513) 241-1187
mlawson@lascinti.org
bhowe@lascinti.org
ssharpe@lascinti.org

/s/ Christian A. Jenkins
Christian A. Jenkins (0070674)
Co-counsel for Plaintiffs
Minnillo & Jenkins Co., LPA
2712 Observatory Avenue
Cincinnati, Ohio 45208
(513) 723-1600
Fax: (513) 723-1620
cjenkins@minnillojenkins.com

## JURY DEMAND

Plaintiffs hereby demand that all issues of fact in the foregoing Complaint be tried to a jury.

/s/ Mark B. Lawson
Mark B. Lawson (0069689)
Attorney at Law

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2013, I have mailed the foregoing by United States Postal Service to the following parties:

Rose Marie L. Fiore
Attorney for Bank of America, N.A.
MCGLINCHEY STAFFORD, PLLC
25550 Chagrin Blvd.
Beachwood, OH  44122


(with request to waive service of summons)
J.M. Adjustment Services, L.L.C.
c/o CSC-Lawyers Incorporating Service
50 West Broad Street
Columbus, OH 43215

/s/ Mark B. Lawson
Mark B. Lawson (0069689)
Attorney at Law